UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DAVID C. SMITH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>STANLEY FURNITURE COMPANY, INC., JOHN D LAPEY, MICHAEL P HALEY, T SCOTT MCILHENNY JR, JEFFREY S GILLIAM, JUSTYN R PUTNAM, and STEVEN A HALE II,<br><br>Defendants. | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>1. **VIOLATIONS OF SECTION 14(a) OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 14a-9**<br><br>2. **VIOLATIONS OF SECTION 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** |

David C. Smith ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1. This is a class action brought by Plaintiff on behalf of himself and the other ordinary shareholders of Stanley Furniture Company, Inc. ("Stanley" or the "Company"), except Defendants (defined below) and their affiliates, against Stanley and the members Stanley's board of directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed asset sale (the "Proposed Transaction") between Stanley and Churchill Downs LLC ("Churchill").

2. On November 20, 2017, the Board caused the Company to enter into an Asset Purchase Agreement (the "Initial Agreement") with Churchill, pursuant to which, Stanley will sell substantially all of the Company's assets in exchange for $11.5 million in cash, a $4.6 million promissory note, the assumption of substantially all of Stanley's liabilities, and a 5% equity interest in Churchill's holding company. On January 22, 2018, the Board caused the Company to enter into a First Amendment to the Asset Purchase Agreement (the "Amended Agreement") with Churchill, pursuant to which, Stanley will sell substantially all of the Company's assets in exchange for at least $7 million in cash, a promissory note in a principal amount equal to the difference between $18,369,000 and the amount of the cash (the "Promissory Note"), the assumption of substantially all of Stanley's liabilities, and a 5% equity interest in Churchill's holding company (the "Purchase Price").

3. On, January 30, 2018, the Board authorized the filing of a materially incomplete and misleading proxy statement on Schedule 14A (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. While Defendants are touting the fairness of the Purchase Price to the Company's stockholders in the Proxy, they have failed to disclose material information that is necessary for stockholders to properly assess the fairness of the Proposed Transaction, thereby rendering certain statements in the Proxy incomplete and misleading. Specifically, the Proxy contains materially incomplete and misleading information concerning: (i) the Company's financial projections; (ii) the specific multiples used by Stephens in its *Comparable Companies Analysis* and *Comparable Transactions Analysis*; iii) the restrictions of the confidentiality agreements entered with parties during the sales process; and (iv) additional valuation information concerning the Promissory Note.

5. The special meeting of Stanley shareholders to vote on the Proposed Transaction is forthcoming. It is imperative that the material information omitted from the Proxy is disclosed to the Company's shareholders prior to the forthcoming shareholder vote so that they can properly exercise their corporate suffrage rights.

6. For these reasons as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act. Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Stanley shareholders, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331, federal question jurisdiction, as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

8. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Stanley maintains its principal place of business in this District and each

3

of the Individual Defendants, and Company officers or directors, either resides in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

10. Plaintiff is, and has been at all relevant times, the owner of Stanley common stock and held such stock since prior to the wrongs complained of herein.

11. Defendant Stanley is a Delaware Corporation with its principle executive offices located at 200 North Hamilton Street, No. 200, High Point, North Carolina. Stanley is a furniture company that specializes in the design, marketing and overseas sourcing resource of the wood residential market. Stanley's common stock trades on the NASDAQ under the symbol "STLY."

12. Individual Defendant John D Lapey is a director of Stanley and is the Chairman of the Board.

13. Individual Defendant Michael P Haley is, and has been at all relevant times, a director of the Company.

14. Individual Defendant T Scott McIlhenny Jr is, and has been at all relevant times, a director of the Company.

15. Individual Defendant Jeffrey S Gilliam is, and has been at all relevant times, a director of the Company.

16. Individual Defendant Justyn R Putnam is, and has been at all relevant times, a director of the Company.

17. Individual Defendant Steven A Hale II is, and has been at all relevant times, a director of the Company.

18. The defendants identified in paragraphs 11-17 are collectively referred to as the "Defendants".

## CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders of Stanley common stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

20. This action is properly maintainable as a class action for the following reasons:

(a) The Class is so numerous that joinder of all members is impracticable. As of December 28, 2017, Stanley had 14,920,117 shares outstanding.

(b) The holders of these shares are believed to be geographically dispersed through the United States;

(c) There are questions of law and fact which are common to the Class and which predominate over questions affecting individual Class members. The common questions include, *inter alia*, the following:

      i. Whether Defendants have violated Section 14(a) of the Exchange act and Rule 14a-9 promulgated thereunder;

      ii. Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

      iii. Whether Plaintiff and the other members of the Class would suffer irreparable injury were they required to vote on the Proposed Transaction as presently anticipated.

(d)      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(e)      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

(f)      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**I.    Background and the Proposed Transaction**

21.      Stanley Furniture Company, Inc incorporated on January 31, 1984, is a design, marketing, and sourcing resource in the wood residential furniture market. The Company's segment is sale of residential wood furniture products. The Company markets its brands through a network of brick-and-mortar furniture retailers, online retailers, and interior designers around the

world. The Company's products are marketed under the Stanley Furniture brand, but also under sub-brands, including Coastal Living and Stone & Leigh. The Company's products are marketed as wood residential home furnishings and include a range of offerings for the home, including dining, bedroom, living room, home office, home entertainment, accent items, and nursery and youth furniture. The Company provides products in a range of wood species and finishes. The Company sells its furniture mainly through independent sales representatives to a range of wholesale customers, such as owner-operated furniture stores, interior design and architecture professionals, decorators, specialty retailers, regional furniture chains, buying clubs, and e-commerce retailers. The Company's product is sourced from independently owned factories in Southeast Asia, primarily in Vietnam.

22. Churchill is a Delaware limited liability company formed by Walter Blocker, Chairman of Vietnam Trade Alliance in Ho Chi Minh City, Vietnam, in order to complete the Proposed Transaction.

23. On November 20, 2017, Stanley issued a press release announcing the Amended Agreement. The press release stated in relevant part:

> High Point, North Carolina, January 23, 2018/GLOBE NEWSWIRE/ – Stanley Furniture Company, Inc. (Nasdaq-NGS: STLY) announced today that it expects to report net sales for the fourth quarter of 2017 of approximately $11.9 million and a fourth quarter net loss of approximately $6.7 million, which includes receipt of $433,000 in CDSOA proceeds. Most of the fourth quarter net loss was attributable to non-recurring charges including approximately $3.3 million in charges for obsolete and slow-moving inventory, approximately $1.7 million in charges relating to the departure of the company's former chief executive offer and two directors during the quarter (including approximately $0.5 million of non-cash accrued expense pursuant to the terms of the former chief executive officer's separation agreement and approximately $0.9 million in non-cash charges associated with the vesting of restricted stock held by the former chief executive officer and directors) and approximately $0.8 million of transaction expenses in connection with the proposed sale of substantially all of the Company's assets.

In addition, the Company announced today that it has entered into an amendment to its previously announced agreement to sell substantially all of its assets to Churchill Downs LLC ("Buyer") providing for a revised purchase price consisting of a combination of cash and a subordinated promissory note aggregating $18.4 million, as well as a 5% equity interest in Buyer's post-closing ultimate parent company. The cash portion of the revised purchase price will be at least $7 million, consisting of $3.5 million pursuant to Buyer's equity financing agreements and the proceeds available at closing under Buyer's loan agreement with North Mill Capital LLC to fund the cash portion of the purchase price. The principal amount of the subordinated promissory note of Buyer will be the difference between $18.4 million and the cash paid by Buyer at closing. The amended agreement continues to provide for Buyer to assume substantially all the Company's liabilities. Under the amendment, the Company will retain certain assets, including cash in an amount of at least $0.6 million, net operating loss carryforwards, and any remaining payments under the Continued Dumping and Subsidy Offset Act. As previously disclosed, Buyer is a Delaware limited liability company formed by Walter Blocker, Chairman of Vietnam Trade Alliance in Ho Chi Minh City, to acquire the Stanley assets. In connection with the amendment, Walter Blocker agreed to provide an additional $500,000 in equity financing to fund a portion of the cash purchase price.

In addition to the revised purchase price, the amendment announced today provides the Company with a go-shop period during which it will actively solicit alternative proposals from third parties for the next 14 days concluding at 11:59 p.m. on February 5, 2018 and permitting the Company to continue discussions for an additional 16 days with any party submitting a proposal by that time if the Company's board of directors determines that proposal could reasonably be expected to lead to a superior proposal (as defined in the agreement) without financing conditions. The amendment also provides for the Company to pay a termination fee of $375,000, rather than $750,000, if it terminates the agreement in connection with a proposal the Company's board of directors determines to be a superior proposal during the go-shop period. There can be no assurance that this process will result in a superior proposal. The Company does not intend to disclose developments with respect to the solicitation process unless and until its board of directors has made a decision with respect to terminating the agreement or changing its recommendation in connection with a superior proposal.

The closing of the asset sale, which is subject to approval by the Company's stockholders, Buyer closing on financing pursuant to its existing financing agreements with North Mill Capital LLC, Endurance Capital Group and Walter Blocker, and other customary closing conditions, is still expected to occur in the first quarter of 2018.

Upon the signing of the agreement in November 2017, Buyer delivered into escrow a $750,000 deposit towards the cash consideration for the sale. If Buyer is unable to close on its financing or the agreement is terminated for certain other reasons, the Company is entitled to receive the deposit as a termination fee.

As previously announced, the Company does not intend to liquidate following the closing of the transaction. The Company's board of directors will evaluate alternatives for use of the cash consideration, which are expected to include using a portion of the cash to either repurchase Company common stock or pay a special dividend to stockholders, and also using a portion of the cash to acquire non-furniture related assets that will allow the Company to potentially derive a benefit from its substantial net operating loss carryforwards. The Company anticipates transaction costs including professional fees and change in control payments to be approximately $2.5 million.

About the Company

Established in 1924, Stanley Furniture Company, Inc. is a leading design, marketing and overseas sourcing resource in the upscale segment of the wood residential market. The Company offers a diversified product line supported by an overseas sourcing model and markets its brands through the wholesale trade's network of brick-and-mortar furniture retailers, online retailers and interior designers worldwide, as well as through direct sales to the consumer online. The Company's common stock is traded on the NASDAQ stock market under the symbol STLY.

## II. The Proxy Is Materially Incomplete and Misleading

24. On January 30, 2018, Stanley filed the Proxy with the SEC in connection with the Proposed Transaction. The Proxy solicits the Company's shareholders to vote in favor of the

Proposed Transaction. Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to cast an informed vote regarding Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

25. The Proxy states that Stephens Inc. ("Stephens") was retained as a financial advisor in June 2016 to assist the Board in analyzing potential strategic alternatives, including such alternatives that could lead to a possible sale of the Company. Stephens also rendered a fairness opinion in connection with the Proposed Transaction. Stephens performed a number of analysis to support its Fairness Opinion, however, Stephens did not perform a discounted cash flow analysis because projections for a sufficient period of time were not made available to Stephens. The Proxy should disclose (i) the reason why the Company does not have adequate projections and (ii) whether Stephens attempted to extrapolate projections for the Company in order to perform a discounted cash flow analysis.

26. With respect to Stephens' *Comparable Companies Analysis* (Proxy at 41-43) and *Comparable Transactions Analysis* (Proxy at 43-44) the Proxy fails to disclose the adjusted individual multiples for each company utilized in each analysis and the basis for such adjustments or the 1 and 2 year average calculation that appears to have skewed the results downwardly. As a result of this omission, shareholders are unable to assess whether Stephens applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down the implied per share equity reference ranges. The omission of such information renders the summary of this valuation analysis and the implied share price ranges incomplete and misleading.

27. The Proxy indicates that 44 parties executed confidentiality agreements. (Proxy at 31). The Proxy is silent as to whether the confidentiality agreements contained Don't Ask Don't Waive ("DADW") provisions and whether such DADW provisions are still in effect, or have fallen away upon the execution of the Amended Agreement on the Proposed Transaction.

28. Accordingly, the question that the Company's shareholders need to assess in determining whether to vote in favor of the Proposed Transaction is clear—is the Purchase Price fair compensation and the result of fair competitive process?

29. Finally, in Stephens' *Implied Transaction Multiples* Analysis, the Proxy fails to disclose the inputs and assumptions underlying the calculation of discounts to the Note Receivable ranging from 17% to 19% and discounts to the equity interest in the Buyer ranging from 25% to 35%. Specifically, shareholders need to know if that information contains a risk of default on the Promissory Note, and if so, what that default risk is. In this analysis, Stephens recognized the need to discount the value of the Purchase Price, and determined a range of value based upon the discounts. However, when deriving multiples to compare the value of the Purchase Price to other companies and transactions, the Proxy only discloses the comparisons of the undiscounted value. This is materially misleading as it presents the value of the Purchase Price much higher than Stephens acknowledges it could be worth.

30. Given that the majority of the Purchase Price's value consists of the Promissory Note, shareholders have a right to know its fair value. Presenting the Promissory Note with a principal amount due in 5 years to be worth the principal amount—as if it were cash—is inherently misleading. Shareholders must be informed of the risk of default for the Promissory Note. Indeed, the Proxy states that "there can be no guarantee that [Churchill] will pay us any portion of the interest or principal due under the note or that upon any default by [Churchill] we will have access

11

Case 1:18-cv-00076-NCT-JLW   Document 1   Filed 02/05/18   Page 11 of 17

to any of the collateral pledged by Buyer under the note." However, the Proxy entirely fails to state what that risk of default may be.

31. In sum, the omission the of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I
### On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

32. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

33. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

34. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or

12

misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

35. The omission of information from a proxy statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

36. Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding the Company's financial projections.

37. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

38. Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most, if not all, of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction. Indeed, the Proxy states that Defendants were privy to and had knowledge of the financial projections for Stanley and the details surrounding discussions with other interested parties and Stephens. Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to review Stephens' analyses in connection with their receipt of the fairness opinions, question the bankers as to their derivation of fairness, and be particularly attentive to the

procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

39. Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Amended Agreement, the preparation and review of strategic alternatives, and the review of Stanley's financial projections.

40. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, and will deprive them of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the shareholder vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II
**On Behalf of Plaintiff and the Class Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. The Individual Defendants acted as controlling persons of Stanley within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Stanley, and participation in and/or awareness of the Stanley's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or

14

indirectly, the decision making of Stanley, including the content and dissemination of the statements that Plaintiff contends are materially incomplete and misleading.

43. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Stanley, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy.

45. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Amended Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

46. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

48. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

C. Rescinding, to the extent already implemented, the Amended Agreement or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D. Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

E. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: February 5, 2018

Respectfully submitted,

**WARD BLACK LAW**

By: /s/Janet Ward Black
Janet Ward Black
NC Bar No. 12869
Nancy Meyers
NC Bar No. 23339
208 West Wendover Avenue
Greensboro, NC 27401
Tel.: (336) 510-2014
Fax: (336) 510-2181
jwblack@wardblacklaw.com

*Counsel for Plaintiff*

**OF COUNSEL**

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel.: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Counsel for Plaintiff*